## LAWLER v. COURAND.

No. 2422.

Court of Civil Appeals of Texas. El Paso.
May 1, 1930.

Rehearing Denied May 29, 1930.

John P. Pfeiffer, of San Antonio, and R. J. Noonan, of Hondo, for appellant.

De Montel & Fly, of Hondo, and Wm. Aubrey and M. E. Buckley, both of San Antonio, for appellee.

WALTHALL, J.

On the 30th day of November, 1925, appellee, Joseph Courand, individually, and as independent executor and sole legatee of the estate of Julia F. Courand, deceased, by warranty deed conveyed to appellant, Jordan T. Lawler, "all of those certain lots or parcels of land situated in the town of Castroville, in Medina County, Texas, being lots numbered one (1), and two (2), in Block No. One (1) Range No. Three (3); said lots together are bounded on the Southern side by Lot No. Three (3) in the same block; on the West, or the ends, by Florence street; on the northern side by Main street, and on the Eastern side, or ends, by the Medina River; said lots being shown by the Plat of Castroville, recorded in Book A-No. 13, page 642, of the Medina County, Texas, Deed Records; together with the dam and millrace in the Medina River, the water privileges and water rights in Castroville, all as now enjoyed by the grantor herein." The deed recites a consideration of $9,-000, $2,000 paid and $7,000 evidenced by seven promissory notes of $1,000 each executed by Lawler and payable to Courand, or order, one in each succeeding year for seven years, all bearing 7 per cent. interest from date, and providing for the payment of taxes, insurance against fire, all improvements, new machinery, and equipment to be free from liens and to become a part of the property and subject to the liens securing the notes; no land, improvements, machinery, or equipment to be sold without consent of the holder of notes, and in no event unless the proceeds of such sale be paid to such holder and applied on the note or notes last to become due. The notes give the holder option to mature same on default in payment of principal or interest of any note, or failure to observe and comply with all requirements of the notes; the notes provide for the payment of attorney fees on default or suit. The vendor's lien was retained in the deed and notes. On the execu-tion of the deed and notes a deed of trust was to secure the seven then unpaid notes.

Lawler paid note No. 1 and the interest on the remaining notes to May 30, 1927.

Appellee, Courand, brought this suit and alleged that appellant has made default in the payment of interest on all of the unpaid notes and default in the payment of note No. 2, which became due and payable on November 30, 1927, and that he had declared all unpaid notes due. He asked a foreclosure of all liens given to secure the notes.

Lawler filed his first amended answer consisting of a general demurrer, general denial, specially pleaded failure of consideration because of misrepresentations made by appellee, inducing the execution of said notes, also a cross-action seeking a rescission of the conveyance of the property, cancellation of the notes, recovery of the purchase money paid and money expended for improvements made on the property, with interest on such moneys, less the reasonable rental value of the residence and profits, if any, and for reasonable value of his services; or, in the alternative, for damages, costs, general relief, and tendered back the property. He alleged that immediately upon discovery of fraud he had tendered back to appellee said premises and demanded back his purchase money spent for improvements in good faith, and that upon appellee's refusal to accept back the premises, he had retained possession for the purpose of protecting the property from waste, devastation, etc.

The answer is lengthy, and, briefly stated, it, in substance, is in effect as follows: That he relied implicitly and exclusively upon the express statement made by Courand to him, at various times during the negotiations for the property, beginning with April, 1925; that the dam across the Medina river (referred to in the deed to him) had been constructed more than fifty years; that it was the oldest dam across the Medina river; that he (Courand) enjoyed all the rights accruing to a riparian owner; that he had priority rights over the Medina Valley Irrigation Company; that he had not disposed of or compromised his rights with the Medina Valley Irrigation Company or any other person, but that he owned as a riparian owner all of the rights that naturally flowed to him by reason of the construction, maintenance, and operation of said dam, millrace, and mill for more than fifty years; that he, Lawler, appellant, in good faith, relying exclusively upon said statements, and without notice of its falsity, paid said money and executed said notes. That in truth and in fact appellee was not the owner of any riparian rights or water rights at the time of the execution of the deed conveying said property to him, but that long prior to said deed, on the 29th day of September, 1913, by an instrument in writing appellant conveyed

same to the Medina Valley Irrigation Company, and which instrument in writing was at the time of the conveyance to him and the execution of said notes not recorded in the deed records of Medina county; that appellee delivered to him (appellant) an abstract of title and that said instrument in writing was not in said abstract; that at the time appellee made said representations he knew he was not the owner of said riparian rights, knew he had disposed of same, knew he could not convey such rights to appellant, and made said statement with the intention and purpose of inducing appellant to purchase said property, and pay him said money and execute said notes; that he would not have purchased said property and executed said notes but for said statement; that he did not discover the falsity of said representation until about the month of June, 1927, and after he had made said payments and executed said notes; that the title conveyed to him is defective and the consideration has failed. in that at the time of the conveyance of the land to him the appellee did not have the right of use of the water as a riparian owner of the land conveyed; that appellee has refused to convey said water rights after repeated demands that he do so; that without the right of the use of said water the property conveyed was not reasonably worth the sum of $1,000.

Appellant alleges that prior to the time he knew that appellee had conveyed to the Medina Valley Irrigation Company the right of use of said water he purchased and installed at a great expense stated a water wheel, electric machine, and other appliances mentioned, and made repairs, all) set out at length, to the mill property and to the residence, all with the approval and acquiescence of appellee, who failed to inform him (appellant) of the conveyance of said water rights but permitted him to make said expenditures by way of improvements; that upon discovery of the falsity of said representation he tendered back said property, which appellee refused to accept, and that he thereafter retained possession to prevent waste.

In the event appellant is not entitled to rescission, he sues for damages, and states the items of his damages.

The case was tried to a jury and the evidence heard. The court granted appellee's motion for an instructed verdict, and thereupon entered judgment for appellee with order of sale, writ of possession, and for a deficiency judgment that appellant take nothing on his cross-action. From said judgment this appeal is prosecuted.

#### Opinion.

On the 30th day of November, 1925, appellee Joseph Courand, by warranty deed conveyed to appellant, Jordan T. Lawler, the two lots of land described In the deed, "together with the dam and mill race in the Medina River, the water privileges and water rights, in Castroville, all as now enjoyed by the grantor herein," for and in consideration of the sum of $9,000; $2,000 paid at the time of the conveyance and $7,000 expressed in notes of $1,000 each, on time payments. Lawler made certain payments, parts of the consideration for the property conveyed to him, and declined to make further payment, and Courand brought this suit to enforce payment on the remaining six unpaid notes, and to foreclose the liens given to secure such payment.

Lawler defends on the ground of failure of consideration for the notes, and false and fraudulent representations made to him by Courand at and prior to the execution of said deed and notes, with reference to Courand's ownership and priority of the water privileges and water rights conveyed to him in the deed, which representations he alleges to be the sole inducements moving him to make said payments and to execute said notes, and to make other expenditures referred to.

Appellant alleges that prior to and at the time of closing the deal for said property he stated to Courand that he was purchasing the property for the purpose of using the water power for manufacturing, generating, and making power and electrical current to be sold, etc., and that, for the purpose of inducing him to purchase the property, Courand stated to him, as a fact, that he (Courand) owned unimpaired the water rights and property rights accruing to him by reason of being a riparian owner and by reason of being the owner and of having constructed and used for more than fifty years the dam and millrace across the Medina river, and that said dam was in fact the oldest dam, constructed on the Medina river; that he further stated as a fact that the flow of water was sufficient to operate the (water) wheel included in the sale and which had been installed about 1890, and had been sufficient during those years to operate said wheel; that the same was built and designated by its makers, naming them, for use in said mill and in connection with the flow of said river.

Appellant alleges that he acted upon said statement of fact, believed same to be true, and so believing made said payments and executed said notes; that said representations were false, and were known to be false when made.

Appellee, Courand, answered by general denial, alleges that he acted in good faith in the sale of the property to Lawler, refers to his deed, and alleges that thereby he conveyed only such water rights and privileges as he then enjoyed; that since that time Lawler has used and enjoyed said premises without interference or hindrance and with greater water privileges than those enjoyed by ri-

parian proprietors on the Medina river prior to the construction of the dams by the Medina Valley Irrigation Company, that is, a constant flow of water through the year instead of the previous occasional or intermittent flow permitting the use of the water for the production of power during only a few months of the year.

It is true, as alleged by Courand, that by his deed, in conveying the water privileges and water rights, he conveyed only "all as now enjoyed by the grantor herein." But we do not think that in conveying only such water privileges and water rights as he enjoyed at the time of executing the deed would meet the issue tendered that he then owned unimpaired the water rights and water privileges which formerly accrued to him, if any, by reason of him being the owner of the lots conveyed and by reason of his year's prior use of the water at the dam and millrace, and other representations alleged to have been made with reference to such rights.

As negativing the fact that Courand did not own unimpaired the water privileges and water rights at the time he conveyed to Lawler, and which he had formerly owned and enjoyed as owner of said land and as owner of said dam and millrace and user of said water from said river for mill purposes, Lawler introduced in evidence the following instrument in writing, duly executed and acknowledged by Courand on September 29th, 1913:

"The State of Texas

"County of Bexar

"Know all men by these presents: That I, Joseph Courand, of said State and County, for and in consideration of Eighteen Hundred Dollars ($1800.00) to me in hand paid by the Medina Valley Irrigation Company, a corporation duly organized under the laws of the State of Colorado, have agreed and acquiesced in and by these presents, do agree, and acquiesce in the construction, maintenance and operation, in perpetuity by said Company and its assigns, of the two dams constructed by it across the Medina River above the town of Castroville and hereby release and discharge the said company from any and all claims for debt or damages sustained by me or existing in my favor, to me, my property and property rights on said river, heretofore or hereafter to be sustained or to accrue by reason or on account of such construction, operation and maintenance of said dams, and particularly from any and all damages to my mill property situated in the said town of Castroville.

"In testimony whereof, I have hereunto set my hand this 29th day of September, 1913. "[Signed] Joseph Courand."

The above instrument was filed for record and recorded November 25, 1927.

It seems quite clear from the above instrument that Courand and the Medina Valley Irrigation Company considered that Courand had sustained or anticipated that he would sustain, probably both, some damage or interference to his property rights in the property by reason of the construction and maintenance of the two dams of the company above his property on the river, and that to adjust such matter, Courand accepted from the company $1,800, and in consideration therefor agreed and acquiesced in the construction, maintenance, and operation of said dams, in perpetuity, and released the company from any and all claims and damage to his mill property rights on said river thereafter to be sustained occasioned by said dams. It is equally clear that after the execution of said instrument Courand did not own unimpaired the water privileges and water rights in the river at Castroville, and as said privileges and rights might be affected by the maintenance and operation of said dams he had, for a consideration, waived, so far as he could do so for himself and his property, any claim for damages or right to protest against such maintenance and operation. We think he might thereafter be estopped from doing either. It is not our purpose to discuss just what the company received or Courand gave by the transaction, more than to hold that Courand's water privileges and rights were not unimpaired.

The question remains: Was the evidence sufficient to carry the case to the jury on the issue of the alleged representations?

The evidence is too voluminous to reproduce it here; it consists of some 142 pages. A few excerpts from Lawler's testimony is all that we can state.

Lawler, testifying, said: "I finally said, 'well, Mr. Courand, I believe I will take it, (referring to the property) or at least an option on it.' And so we agreed on the price of the option; and then I said, 'Mr. Courand, now, there is one thing we have not said anything about yet, and that is about the two dams that have been made,' and I am very positive that I told him just about like I am going to say now: I said, 'Mr. Courand, have you ever done anything or made any agreement or made any settlement with that irrigation company about your water; have you released them or have they paid you anything, or have you made any compromise?' And I expressly said, 'Have you made any compromise of your water rights in there?' Mr. Courand said, 'No, I have made no agreement of any kind with the irrigation company,' and he said, 'that is all right'; I then said, 'Mr. Courand, if that is the case we will go ahead,' and I said, 'Well, we will write out an agreement,' and he did, and I gave him my check for $200.00."

The option contract referred to was introduced in evidence, which, in part, recites its

date to be 25th day of May, 1925; that Courand agrees to sell to Lawler "Lots 1 and 2, Block 1, Range 3, known as Courand Mills, at Castroville, in Medina County, Texas, together with the dam and mill race in the Medina River, the water privileges and water rights in Castroville," reciting the consideration.

On identifying the deed from Courand conveying to him, the witness said:

"Yes, sir, Mr. Courand had not up to the time this (referring to the deed) was delivered to me, * * * told me that he had made any settlement or made any agreement or disposition of any of his rights connected with that property. * * * I relied entirely upon the statement made to me by Mr. Courand that he had not disposed of his rights. I certainly would not have purchased this property had I known that he had made a disposition of any of the rights connected with it."

The deed from Courand to Lawler was then read in evidence. The abstract of title to said property, by agreement, was set out in full in the statement of facts, together with a sketch or map showing the location of the property with reference to the river, was put in evidence. A statement, apparently from the abstract company, of date June 6, 1925, M-Noon, recites that the abstract of title does not show or contain the instrument from Courand to the Medina Valley Irrigation Company, set out above.

Without quoting the evidence, it is made to appear that a much less flow of water in the river comes down to appellee's dam at Castroville previous to and at the time of the trial than did come down in 1924 and 1925, materially decreasing the efficiency of the mill property, and that said decrease is caused by the use made of the water at the dams maintained and operated by irrigation company dams above Castroville. It is further made to appear that the company was and is at all times claiming the right of use of the water as against the appellant by reason of the instrument executed by Courand to the company. The record shows beyond question that the irrigation company is claiming the right of use of the water under the Courand instrument of September 29, 1913.

The record shows the expenditures of money, made by Lawler as pleaded, were made with the full knowledge, consent, and agreement of Courand.

Lawler made a sufficient tender of the property back to Courand, which tender was refused, and in his answer offered to surrender said property.

The above is an exceedingly brief statement of the evidence heard on the trial; in fact, it is only a suggestion of the repeated conversations had between Lawler and Courand, but sufficient, we think, to show the general nature of the differences between them.

It seems quite clear to us: First, that Courand by his deed conveyed to Lawler his mill, milldam, and millrace, and for use in connection therewith conveyed his water privileges and water rights; second, that prior to his deed he had disposed of his water privileges and water rights; third, that the water privileges and water rights were necessary to a use in connection with the mill, milldam, and millrace; fourth, that by reason of the instrument of September 29, 1913, Courand's right to the use of the water for mill purposes was not unimpaired when he conveyed the water privileges and rights to Lawler; fifth, Courand by his deed, and representations to Lawler, testified to by Lawler but denied by Courand, led Lawler to believe that he was getting the water privileges and water rights.

The evidence was sufficient to raise the issue and take the case to the jury.

It is evident from the deed and the written instrument of September 29, 1913, without any parol representation, that Courand conveyed more than he then owned, and that Lawler received less than the deed purports to convey. The rule is well established that where the testimony is of the character sufficient to raise the disputed issue, it is the right of the party to have the issue determined by the verdict of the jury. Bendy v. Carter & Bro. (Tex. Com. App.) 14 S.W.(2d) 813; Choate v. S. A. & A. P. Ry. Co., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319; Harrison v. Orr (Tex. Com. App.) 10 S.W.(2d) 381.

Now, when we consider, in addition to the deed and the written instrument, the issue of intentional misrepresentation alleged, of a material factor in a transaction such as is presented here, such as the right of the use of the water in the river in the operation of the mill and its adjuncts conveyed by the deed, the law is thus stated by Judge Wheeler in Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717:

"If the party, says Story, intentionally misrepresents a material fact, or produces a false impression by words or acts, in order to mislead, or obtain an undue advantage, it is a case of manifest fraud. (1 Story Eq. Sec. 192.) It is a rule in equity, that all the material facts must be known to both parties, to render the agreement just and fair in all its parts. (2 Kent Com. 491.) And if there be any intentional misrepresentation or concealment of material facts, in the making of a contract, in cases in which the parties have not equal access to the means of information, it will vitiate and avoid the contract. (2 Kent Com. 482; 2 Bail. R. 324.) It is immaterial whether the misrepresentation be made on the sale of real or personal property; or wheth-

er it relates to the title to land, or some collateral thing attached to it."

Without quoting the numerous references by our own courts, to the Mitchell v. Zimmerman Case, we refer to Shepard's Texas Citations. It states a salutary and universal principle of law, and we think applicable to the instant case. The Courand deed to Lawler conveyed a mill, millrace, together with, and in connection therewith, the water privileges and water rights. He had then disposed of what rights he had to the use of the water. He necessarily knew that he had done so, and he knew that such disposition of the water rights had not been placed of record, and that Lawler did not know, when the deed was made, and the payments made and when the notes were executed, that the water privileges incident to the property conveyed by the deed had then been conveyed to the irrigation company. Now when Lawler testified that he specially asked Courand whether he had in any way committed his water privileges, and that Courand assured him he had not done so, the issue of parol representation expressed in words was fully shown and should have been submitted.

The case must be reversed.

Appellant pleaded, in the alternative, a cross-action, in effect that should it be held that he is not entitled to a rescission of the contract, in that event, he alleged that the time of the sale and purchase of the property, the value of the property, without the water privileges and water rights, was $1,000; that the improvements to the mill, milldam, and power plant, totaling the sum of $13,444, have become worthless, because of the diversion of the water and by reason thereof the failure of sufficient water in the Medina river. He alleges as a part of his damages that he have the unpaid $6,000 notes sued on and all interest canceled, and that he recover back the sums of money theretofore paid, with legal interest from the times of such payments, less the sum of $1,000, the value of said property without the water rights.

Under the rule of decision stated in Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, appellant having purchased the land and paid the consideration in money and the remaining unpaid notes, relying upon the representations of Courand as to title as expressed in the deed and the oral representations, if made, appellant would be entitled to be restored to his former state upon surrendering or offering to surrender what he had received from Courand in the transaction.

The difficulty we find in determining the extent of the relief to which appellant would be entitled to be restored to his former state is that appellant bases his right upon the parol representations alleged to have been made by Courand, rather than upon the failure of the deed to convey what the deed purports to convey. In the absence of a determination of the issue of fraudulent representations as alleged inducing the purchase, we think we may not enter judgment, although we might feel that the representations were immaterial in view of the undisputed facts that the deed conveyed water rights and privileges, the principal value of the property as then owned by Courand, when he then knew he did not own the water privileges and rights, but had, for a consideration, conveyed them to another.

The extent of our order, therefore, is to reverse and remand the case.